Egan Jr., J.
Appeal from two decisions of the Unemployment Insurance Appeal Board, filed September 28, 2012, which ruled that Coface North America Insurance Company was liable for unemployment insurance contributions based upon remuneration paid to claimant and others similarly situated.
In August 2007, claimant entered into a series of written agreements with Coface North America Insurance Company to act as an agent for Coface selling commercial credit insurance. Pursuant to the terms thereof, claimant was to be paid a draw against her commissions in the amount of $60,000 — payable in bimonthly installments of $2,500. Following an unsatisfactory performance evaluation in April 2008, claimant’s draw payments ceased, and she subsequently was paid on a commission-only basis. In February 2009, Coface terminated its relationship with claimant altogether, prompting claimant to file for unemployment insurance benefits.
The Department of Labor issued an initial determination finding that claimant was eligible for benefits based upon remuneration paid to her and others similarly situated. Coface objected and, following hearings, an Administrative Law Judge sustained the Department’s determination and ruled that claimant was an employee for purposes of unemployment insurance benefits. Upon review, the Unemployment Insurance Appeal Board affirmed, and Coface now appeals.*
*1133 Coface initially contends that its written agreements with claimant satisfy the requirements of Labor Law § 511 (21), thereby excluding the services provided by claimant from the definition of “employment” and rendering her ineligible to receive unemployment insurance benefits. In this regard, Labor Law § 511 (21) provides that “[t]he term ‘employment’ shall not include the services of a licensed insurance agent or broker” if, among other things, “the services performed by the agent or broker are performed pursuant to a written contract” (Labor Law § 511 [21] [c]) and such contract, in turn, contains seven enumerated provisions (see Labor Law § 511 [21] [d] [i] - [vii]). Although Coface readily acknowledges that the relevant agreements do not contain “verbatim transcriptions” of the statutory requirements, it argues that where the agreements are silent, the parties’ conduct “completes the contractual picture and meets the language and meaning of the statute.” That argument, to our analysis, does not comport with basic principles of statutory interpretation.
“It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. The starting point is always to look to the language itself and where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Pultz v Economakis, 10 NY3d 542, 547 [2008] [internal quotation marks and citations omitted]; accord Matter of American Tax Funding, LLC v Saita, 107 AD3d 1134, 1135 [2013]; see Matter of Talisman Energy USA, Inc. v New York State Dept. of Envtl. Conservation, 113 AD3d 902, 904 [2014]). Here, Labor Law § 511 (21) expressly and unequivocally requires that, in order to exclude the services provided by a licensed insurance agent or broker from the definition of employment, the written agreement(s) governing the agent’s or broker’s services must contain the seven enumerated provisions set forth therein. Contrary to the expansive construction advanced by Coface here, nothing in the plain language of the statute suggests that we may look to the parties’ conduct to overcome the acknowledged deficiencies in the underlying written agreements. Accordingly, the Board properly concluded that the parties’ writings did not satisfy the requirements of Labor Law § 511 (21) and, therefore, the statute did not bar claimant’s application for unemployment insurance benefits.
Alternatively, Coface contends that the Board’s finding of an employer-employee relationship is not supported by substantial evidence. We disagree. Whether an employment relationship ex *1134 ists within the meaning of the unemployment insurance law is a factual question for the Board to resolve, and its determination in this regard — if supported by substantial evidence in the record as a whole — will not be disturbed (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Matter of John Lack Assoc., LLC [Commissioner of Labor], 112 AD3d 1042, 1043 [2013]; [Matter of Lamar [Eden Tech., Inc.-Commissioner of Labor], 109 AD3d 1038, 1039 [2013]). “While no single factor is determinative, control over the results produced or the means used to achieve those results are pertinent considerations, with the latter being more important” (Matter of Automotive Serv. Sys., Inc. [Commissioner of Labor], 56 AD3d 854, 855 [2008] [citations omitted]; see Matter of John Lack Assoc., LLC [Commissioner of Labor], 112 AD3d at 1043; Matter of Smith [College Network Inc. — Commissioner of Labor], 109 AD3d 1058, 1059 [2013]).
Here, there is ample evidence to support the Board’s finding that Coface exercised control over numerous aspects of claimant’s work. Coface, among other things, assigned claimant a sales territory (see Matter of Interlandi [Cremosa Foods Co., LLC — Commissioner of Labor], 70 AD3d 1150, 1150 [2010]; Matter of Lombard [SOH Distrib. Co., Inc. — Commissioner of Labor], 52 AD3d 981, 982 [2008]), provided her with sales leads that she was required to pursue (see Matter of Noel [Life Alert Emergency Response, Inc. — Commissioner of Labor], 38 AD3d 1082, 1084 [2007]; Matter of O’Toole [Biomet Marx & Diamond, Inc. — Commissioner of Labor], 13 AD3d 767, 768 [2004]), precluded claimant from representing other insurers without Coface’s prior written consent (see Matter of Interlandi [Cremosa Foods Co., LLC — Commissioner of Labor], 70 AD3d at 1151; Matter of MacFarlane [Aid Assn. for Lutherans Corp.— Commissioner of Labor], 35 AD3d 1076, 1077 [2006]), directed that claimant devote all of her efforts to generating business for Coface, reserved the right to accept or reject insurance proposals submitted by claimant (see Matter of Lambert [Staubach Retail Servs. New England, LLC — Commissioner of Labor], 18 AD3d 1049, 1050 [2005]), required claimant to work under the direction and supervision of its regional agent, set claimant’s commission rate, paid claimant a bimonthly draw against her commissions that she was not required to refund (see Matter of Miciletto [Village Wine Imports Ltd. — Commissioner of Labor], 109 AD3d 1035, 1035 [2013]) and contributed to her health insurance premiums (Matter of MacFarlane [Aid Assn. for Lutherans Corp. — Commissioner of Labor], 35 AD3d at 1077). Additionally, claimant testified that Coface scheduled her workday, required her to work out of its regional office during *1135 her first year of employment, insisted that she keep her supervisor apprised of her whereabouts at all times and required her to attend quarterly sales meetings (see Matter of Lambert [Staubach Retail Servs. New England, LLC — Commissioner of Labor], 18 AD3d at 1050). Such proof, in our view, is more than sufficient to support the Board’s finding of an employment relationship between Coface and claimant (and those similarly situated) — notwithstanding the existence of other proof in the record that could support a contrary conclusion (see e.g. Matter of Scinta [ExamOne World Wide Inc. — Commissioner of Labor], 113 AD3d 959, 961 [2014]; Matter of Miciletto [Village Wine Imports Ltd. — Commissioner of Labor], 109 AD3d at 1036), including a provision in the parties’ agreements identifying claimant as an independent contractor (see Matter of Professional Career Ctr., Inc. [Commissioner of Labor], 105 AD3d 1219, 1220 [2013]; Matter of Wright [Central Transp., Inc. — Commissioner of Labor], 58 AD3d 988, 989-990 [2009], lv dismissed 12 NY3d 843 [2009]). Finally, although it is unclear whether the Board expressly considered certain guidelines adopted by the Department in ascertaining claimant’s employment status (see Guidelines for Determining Worker Status: Insurance Sales Industry, http://www.labor.ny.gov/formsdocs/ui/ia318.18.pdf [last updated Sept. 2013]), we discern no inconsistency between either the guidelines and the common-law employer-employee test or the guidelines and the Board’s decision. Coface’s remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Peters, EJ., Stein and McCarthy, JJ., concur. Ordered that the decisions are affirmed, with costs to claimant.

 It appears that the Department of Labor issued two case numbers in this matter, resulting in a combined hearing and identical decisions in each case by *1133 both the Administrative Law Judge and the Unemployment Insurance Appeal Board.